O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RANDALL W. LEWIS, | Case No. CV 07-3985-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.  Factual and Procedural Background**

    This is an action for judicial review of the Commissioner's final decision denying Plaintiff Randall W. Lewis' application for disability insurance and supplemental security income benefits. Plaintiff alleges that he became disabled and unable to work on October 1, 2004 due to cardiac disease and hypertension.

    Plaintiff was born on September 29, 1970 and was 34 years old at the time of the alleged onset of disability. (Administrative Record ("AR") 17, 22.) He has a tenth or eleventh grade education. (AR 238, 559.) Plaintiff's past relevant work was in the construction industry. (AR 22.)  Plaintiff suffered two heart attacks in 2001 and has not

worked since that time.

Plaintiff's first application for disability insurance benefits, filed in 2002, was denied at the initial level of review on December 12, 2002. (AR 42.) After a hearing, Administrative Law Judge L. Kalei Fong determined on July 18, 2003 that Plaintiff was not entitled to disability benefits. (AR 224.) The Appeals Council denied review of ALJ Fong's decision on August 25, 2003. (AR 229.) Plaintiff took no further action on that application.

Plaintiff's next application for disability insurance benefits was denied at the initial level on August 6, 2004. (AR 616.) It appears that Plaintiff did not request a hearing on this application.

Plaintiff's then filed the applications for benefits currently at issue, which was initially denied on August 5, 2005. (AR 634.) A hearing on the application was held on August 1, 2006 before ALJ Henry M. Tai. (AR 640.) Joseph Smith acted as Plaintiff's non-attorney representative at the hearing. (Id.) In a decision dated October 25, 2006, the ALJ found that Plaintiff suffered from cardiac disease and hypertension, which constituted severe impairments. However, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work and that jobs which Plaintiff could perform existed in significant numbers in the national economy. (AR 23.) Thus, the ALJ determined that Plaintiff was not entitled to benefits. (Id.) The Appeals Council denied review of the ALJ's decision on March 22, 2007.[1] (AR 10.)

//

---

[1] The Appeals Council decision erroneously states that its denial of review concerned the ALJ's July 18, 2003 decision, rather than the October 25, 2006 decision.

Plaintiff commenced this action on June 28, 2007. The parties have filed a joint stipulation of contested issues. Plaintiff makes two claims of error: (1) that the ALJ improperly evaluated the medical evidence in concluding that Plaintiff can perform a full range of light work, and (2) that the ALJ improperly discounted Plaintiff's subjective complaints. (Joint Stipulation ("JS") at 2.) The matter is ready for decision.

## II.   Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support a decision either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//

**III. Discussion and Analysis**

    **A.**   **The ALJ Properly Evaluated the Medical Evidence**

Plaintiff contends that the ALJ improperly evaluated the medical evidence in concluding that Plaintiff can perform a full range of light work. Plaintiff's argument has two distinct parts, though Plaintiff fails to clearly articulate this distinction in the Joint Stipulation. Plaintiff first argues that the ALJ erred at step three of the sequential evaluation process by improperly determining that his impairments do not meet or equal a disabling impairment, i.e. a "listed impairment." (JS at 5.) Plaintiff also contends in the alternative that substantial evidence does not support the ALJ's determination, at step four of the sequential evaluation process, that Plaintiff is capable of light work. (JS at 6.) Each of these contentions is considered in turn.

        **1.**   **The ALJ's Determination that Plaintiff's Impairments do Not Meet or Equal a Disabling Impairment is Substantially Supported in the Record**

At step three of the sequential evaluation process, an ALJ considers whether an applicant has an impairment or combination of impairments that meet or medically equal an impairment included in the federal regulations' listing of disabling impairments. In a single sentence statement, the ALJ found that the medical record lacked evidence of impairments that would meet or equal a listed impairment. (AR 20.) Plaintiff argues that his impairments "now approach[] listing level severity" for chronic heart failure.[2] (JS 4.) *See* 20 C.F.R. Pt.

---

[2] The issue of course is not the severity of Plaintiff's impairments "now," but the severity of Plaintiff's impairments at the time of the hearing. Moreover, merely "approaching" listing level severity is insufficient for a finding of disability under the listings.

404, Subpt. P, Appx. 1, Listing 4.02. Plaintiff further contends that the ALJ erred by failing "to make sufficient findings to show that he actually considered" whether Plaintiff's heart problems were medically equivalent to the listing for chronic heart failure.

In order to establish chronic heart failure under the listings, Plaintiff's symptoms must meet two requirements. First, he must suffer from medically documented systolic failure, which is indicated by an ejection fraction of 30% or less during a period of stability (i.e. not during a period of acute heart failure). 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 4.02A1. Second, Plaintiff must demonstrate one of the following: (1) persistent symptoms of heart failure which very seriously limit activities of daily living and cause a medical consultant to conclude that an exercise test would pose a significant risk; (2) three or more episodes of acute congestive heart failure within a consecutive twelve-month period requiring acute extended physician intervention such as hospitalization or emergency room treatment for twelve hours or more; or (3) inability to perform an exercise test at a workload equivalent to 5 METs or less due to one of several physical problems. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 4.02A1.

Tests administered in February, March, and May 2005 measured Plaintiff's ejection fraction at 30%, meeting the systolic failure requirement, the first of the two requirements necessary for a meeting the listing of chronic heart failure.[3] (AR 533, 535, 536.)  However, the record evidence fails to demonstrate that Plaintiff's condition met any of the three criteria under the second requirement. Plaintiff was

---

[3] Ejection fraction is a measure of the ability of the ventricles to contract, which at lower values indicates ventricular dysfunction. Dorland's Illustrated Medical Dictionary (27th ed. 1988).

hospitalized for heart attacks in February and September 2001. (AR 346, 355.) While Plaintiff demonstrated persistent symptoms of a cardiac impairment which he alleged significantly effected his activities of daily living, neither of the medical consultant opinions in the record, nor any other medical report, opined that an exercise test would have posed a significant risk to Plaintiff. (AR 445, 558.) Plaintiff accordingly does not meet criterion (1).

As to criterion (2), Plaintiff was hospitalized for congestive heart failure on separate occasions in May and June 2004. (AR 445, 516, 559). However, the record does not show three of these episodes during a twelve-month period as required by the listings. He was again hospitalized in February 2005 for chest pain, but with no diagnosis of congestive heart failure. (AR 539-41.) Electrocardiograms undertaken in April 2004 and August 2005 were "abnormal." (AR 496, 610.) However, a cardiac catheterization in August 2005 resulted in a diagnosis of high cholesterol, hypertension and history of myocardial infarction. (AR 597.) There was no indication of congestive heart failure. Plaintiff's impairment does not meet criterion (2).

Plaintiff does not meet criterion (3) because there is no indication in the record of an inability to perform exercise at a particular workload.

A thorough review of the record reveals that Plaintiff does not meet any of the three categories of the second requirement for meeting the chronic heart failure listing. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *see also* 20 C.F.R. § 404.1525(d). The ALJ's conclusion that Plaintiff does not meet any of the listings is thus supported by the record.

Plaintiff also contends that the ALJ's cursory step three finding fails to demonstrate that the ALJ actually considered whether Plaintiff's impairments are medically equivalent to the listing for chronic heart failure.[4] An ALJ is required to adequately explain the basis for his or her determination that an applicant's impairments do not equal a listing. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, an ALJ is not required to "state why a claimant failed to satisfy every different section of the listing impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Accordingly, a well-developed discussion of the factual basis of a claimant's impairments elsewhere in a hearing decisions may under certain circumstances support an unexplained finding of no medical equivalence at step three. *Gonzalez*, 914 F.2d at 1201 (finding an ALJ's four-page summary of the record an adequate basis for unexplained statement that the applicant's impairments did not meet or equal any listing). Here, the ALJ reviewed Plaintiff's medical history at step four, including Plaintiff's history of heart problems. This review of the evidence relevant to his cardiac impairment supports the ALJ's step three finding under *Gonzalez*. The ALJ did not err in failing to explain his finding that Plaintiff's impairments were not medically equivalent to any listed impairments.

Moreover, any error in the analysis is harmless because Plaintiff has failed to show that his condition is even aruguably medically equivalent to the listing for chronic heart failure. To show medical equivalence, a claimant must generally establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the

---

[4] As the Social Security Regulations provide, "If [an applicant's] impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing." 20 C.F.R. § 404.1525(c)(5).

characteristics of a relevant listed impairment.[5] *Tacket v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). Plaintiff has made no argument that his symptoms are equal in severity and duration to the characteristics of chronic heart failure. Absent this showing, the ALJ's failure to explain the lack of medical equivalence must be deemed harmless and therefore not subject to reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Relief is not warranted.

**2. Substantial Evidence Supports the ALJ's Determination that Plaintiff is Capable of Performing Light Work**

The ALJ's findings under step four of the sequential evaluation process and other evidence in the record demonstrate that substantial evidence supports the ALJ's determination that Plaintiff is capable of engaging in a full range of light work.[6] The ALJ relied in part upon consultative examiner Dr. Barry Gordon Gwartz's independent examination and report in determining Plaintiff's RFC. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)(Consultative examiner's opinion on an

---

[5] More specifically, medical equivalence can be found when any of three circumstances exist: (1) where the applicant does not exhibit one or more of the findings specified in the particular listing or one or more of the findings is not as severe as specified in the particular listing, but where there are other findings related to the impairment that are at least of equal medical significance to the required criteria; (2) if the impairment from which the applicant suffers is not listed, but is medically equivalent to a listed impairment; or (3) through a combination of impairments, not one of which meets a listed impairment, but which are of equal medical significance to a listed impairment. 20 C.F.R. § 404.1526(b).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable fo performing a full range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

8

applicant's RFC may itself constitute substantial evidence if it rests on independent examination.) Dr. Gwartz concluded that Plaintiff could perform medium work. (AR 563.) The ALJ also reviewed Plaintiff's history of cardiac problems and concluded that they were intermittent in nature. (AR 22.) These factors alone constitute substantial evidence that Plaintiff can perform a full range of light work.

Plaintiff essentially argues that the worsening of his heart condition after 2003, when a different ALJ determined him to be capable of a full range of light work, precludes the ALJ's 2006 determination that he was capable of light work. While there was some increase in the severity of Plaintiff's condition after 2003, the medical reports and conclusions of the examining physicians support the ALJ's conclusion.

Plaintiff further suggests that his obesity should have been a factor in the ALJ's evaluation of his cardiac impairment.[7] The ALJ's failure to consider Plaintiff's obesity in relation to his RFC was proper because Plaintiff failed to show how his obesity in combination with another impairment increased the severity of his limitations. Cf. *Burch*, 400 F.3d at 682.

**B.   The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain**

Plaintiff contends that the ALJ failed to properly evaluate his subjective complaints of pain in assessing his RFC. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (AR 20.)

---

[7] As of July 20, 2005, Plaintiff measured at 5'10" and weighed 262 pounds, giving him a body mass index of 37.6. (AR 560.) However, one physician referred to Plaintiff's obesity as "mild." (AR 540.)

9

The ALJ supported this finding on the basis of Plaintiff's history of clinically documented, though intermittent cardiac problems, Plaintiff's decision to check himself out of the hospital on several occasions against the advice of medical professionals, the absence of remarkable examination findings which would indicate chronic pain throughout Plaintiff's body, and the lack of a regular course of treatment. (AR 21-22.) The ALJ also noted that Plaintiff made inconsistent statements about the frequency at which he was hospitalized for his conditions. (AR 20.)

The ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc); *see also* 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). For example, an ALJ may discredit a claimant's testimony if he or she engages in daily activities that are inconsistent with his or her allegations. *Bunnell*, 947 F.2d at 346. "Another relevant factor may be 'unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ may also use "ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)(internal quotations omitted).

//

Here, the ALJ identified Plaintiff's failure to seek a regular source of treatment and Plaintiff's inconsistent statements about the frequency of his hospitalization. (AR 20-22.) The ALJ also described in detail the manner in which the medical evidence did not support his subjective complaints. (*Id.*) By identifying specific and valid reasons for his credibility determination, the ALJ properly evaluated Plaintiff's complaints of pain in determining Plaintiff's RFC. *Reddick v. Chater*, 157 F.3d 715, 722 (1998)(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).

**IV. Conclusion**

For the reasons stated above, the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is **GRANTED.**

DATED: March 20, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge